for the appellant is Michael Regan for the, pronounce correctly? Yes. For the appellee is James Welder. Mr. Regan, you may proceed, sir. Thank you. Mr. Welder, my name is Mike Regan. I represent the defendant Tremco in the appellant here. I intend to argue this morning that the plaintiffs have not met their burden of proof on exposure caused by fire release in the first instance and on substantial factor causation and on the existence of the duty, because there is no proof of the existence of knowledge of Tremco or within the industry that the appellant is responsible for the fire. Because of these omissions of proof, Tremco is entitled to a KMOB, but certainly a new trial. If time permits, I will also touch on the settlement. Mr. Regan, I hope that you're able to get through all that you have anticipated there in your outline. However, I want to make sure that we spend sufficient time on the substantial causation issue. However, that fits into your outline. I think that bears extra emphasis here this morning. Thank you. I will. The court will. The plaintiffs have the burden of proof to show, first, that there was exposure due to fire release, second, that there was such a level of exposure, which is the substantial factor issue, that it can reasonably be regarded as being a potential substantial factor in the plaintiff's injury. The law grounds these requirements on two fundamental principles. First, the plaintiff at all times has the burden to produce sufficient evidence that the defendant caused the claimed injury. Nolan describes that principle as being actually right. That burden of proof cannot be met with evidence or arguments that constitute conjecture or guesswork. Nolan, describing Packer, said that it, quote, repeated the well-settled rule that proof which relies on conjecture, speculation, or guesswork is insufficient. This court applied these fundamental principles in Bowles v. Holmes, Illinois. The court described how Packer balances the difficulties of proof on the part of the plaintiff with the rights of the defendant to be free from liability predicated upon guesswork. In Bowles, he often proved this held to be correct. Both parties have discussed this court's opinion in McKinney v. Holbrook, and I intend to reference it frequently this morning. But that's not because McKinney introduced a new rule of law that was unique in any way, but rather McKinney is useful because there is a controlling factual similarity in this case, most especially because Dr. Frank gave the same opinions here as he did there, and the opinion is expressive of the current state of the law. Now, let's talk with respect to cases involving expensive products. There is no confident evidence of release in the first instance of fibers from this encapsulated cloth or table. Product containing asbestos becomes dangerous only when the fibers are released as fibers are taken into the air. This requires confident testimony and, in this case, expert testimony, and Tremco is entitled to a JNOB because there is no such confident proof in this record. In contrast, Tremco offers a highly detailed testimony of Dr. Lundquist, an imperial science expert, who testified that no asbestos fibers were detectable with two types of equipment, even under his aggressive manipulation of the products and designed to emulate the severe use of the products in war situations. I'll read some of his details of his testimony in a moment. Everything the plaintiffs have offered to suggest that they have satisfied their burden must definitively be rejected. Counsel, let me interrupt. You said a few minutes ago that McKinney did not introduce a new rule of law, but in reading McKinney, it seems to me that it says that plaintiff has to prove that he inhaled enough of the fibers of defendant's product, which was a welding rod. Why isn't that a new rule of law? Where did that come from, that he has to prove the quantity of the fibers that he inhaled? So the plaintiff carries that principle to the point which McKinney didn't, which the plaintiff says that the plaintiff is wrongfully, wrongly being held to prove numbers, quantification in terms of numbers. But that's not our point. And I don't believe that was the point of the McKinney case in paragraph 78, which you're referencing. And it just has to be proved that he inhaled enough of the fibers that one could immediately say... Well, again, enough of the fibers, that's a measurable quantity, isn't it? And that's not what the case law says, is it? Other than the McKinney case. So then I guess that takes us to Frank's every single point. It is sufficient. And the whole line of Thacker and Bowles, etc., is that there has to be some meaningful reasonableness to this. There has to be enough exposure that it can be rationally, reasonably said that maybe this was a problem. And so McKinney says that, okay, because only of the reliance on dement, the dement studies, we're going to let that come in. But there is absolutely no showing that this was anything more than background. And so the law is, and I can't cite the cases to you right now, and I believe that perhaps Thacker says this, but I can't assure that, that there has to be proof that the exposure is more than background. And there's not a word of that anywhere here. And I realize what the Court must have talked about now, but before we get there, you have to decide that Frank was admissible in the first instance. Well, before you get to Frank, you have to get to the underlying facts and evidence of exposure. Because his opinions are necessarily based on the evidence of exposure. There's another passage in McKinney where the Court, a different panel of the Court, wrote, quote, proving merely that plaintiff came into frequent, close, and regular contact with welding rods manufactured by defendant would not, on the logic of Thacker, prove substantial causation any more than proving he routinely walked on floor tiles containing asbestos would prove substantial causation. Taking that passage in conjunction with what Justice Turner read is the McKinney Court is simply drawing a distinction between a case where a plaintiff proves exposure to asbestos in some form, potentially encapsulated, non-respirable, versus a case where the evidence is plaintiff was exposed to respirable asbestos fibers. And it's in the latter circumstance where the evidence then provides, it is a substantial factor, the basis upon which a jury may return damages. I agree with that. Is that what McKinney is saying? And is that the law? And I'll ask Mr. Wilder when he has an opportunity to address us to comment on the same thing. Yes. That's what McKinney says. And that is the law. And the key, I think, is that the opinions talk about exposure to asbestos products. And the plaintiff then takes that and says, okay, for his work, for the plaintiff's working career, he was exposed to asbestos products. But that's the floor time. I mean, the fact that you were in proximity to asbestos products all alone doesn't get it. And again, I do not wish to step away from what the court obviously wants to talk about. But at the same time, we can't ignore the fact, and I'm not suggesting you do, that Frank's testimony here is absolutely as indivisible here as it was in McKinney. And so there is no confident proof of exposure. So you're back to the floor title. But even if you grant some width, if you will, of the possibility of a release of fiber here, which we say and believe is not the case, if that's all it is, there's no proof, there's no suggestion as to the extent of it at all. We're not saying they have to prove numbers, but they have to show that there is something more than background. And that's the law. That is clearly the law. I would take up your offer, Judge, but in honesty, I can't say that there is any such evidence here. Now, I have listened, and I'm prepared to talk about anything that—all the things that they said is their best evidence. But Frank has to come off the table because of McKinney. The only reason that Frank was permitted in McKinney was that he relied upon the demented studies there. But the prior part of the opinion says, paragraph 44, it would be sheer, unsubstantial speculation to conclude that simply because he never seen the products. And the court talked about the need for expert testimony, et cetera. So that's 44. That's the essence of McKinney. That knocks out Frank. Now, I cannot say what their best is because the rest is just not supportable by the record. Let me follow up on a point. It might be a minor technical thing, but it's one I'm concerned about. You said Dr. Frank's testimony was not admissible if it had been admitted. It seems to me we're talking about potentially two different things. One is the admissibility of it and the weight to be given if it was admitted. And is—are you suggesting our focus should be first on whether it's admissible at all? And if it is admissible, it seems to me that you are arguing that even if it is admissible, it's not sufficient. It's not adequate to help the claim be disbursed. But I'm not sure what your argument is about whether it should be admitted at all. Justice Steinman, I understand your question exactly, and we take both positions. In the trial error section of the brief, under new trial, we explain that we made numerous motions in the circuit court to say that it should not be admitted at all. But secondly, if it came into evidence that it is insufficient and cannot be considered by the court here, and the McKinney court works through that in paragraph 43, and then grounded it upon the First District case, and while testimony grounded in expert analysis of the known physical facts is welcome, conclusory opinions based on sheer, unsubstantiated speculation should be considered irrelevant. And so it was not admissible. We preserve that. And secondly, it cannot be afforded weight here at all. Let's assume for the moment that we consider Dr. Frank's testimony. What is it, then, from your standpoint, well, let me switch that around. What is it from plaintiff's standpoint that provides the linkage that is apparently necessary, that being evidence of plaintiff's decedent's exposure to respirable asbestos fibers here? What is it in Dr. Frank's testimony that provides that piece of the evidence? It is only, and I'm again attempting to do what you asked, it is only that Frank's, Dr. Frank's statement that every exposure contributes to the cause and therefore contributes to the disease. And he says it is either, there's a quote in Frank's testimony, that it is either substantial or it's nothing. But specifically as to plaintiff's decedent's exposure in this case, what did he testify to that would allow plaintiff to say, here is our evidence of exposure to respirable asbestos fibers? Nothing that would be sufficient. So this opinion that any amount of exposure would constitute substantial causation isn't premised on facts in this case. I want to make sure that I'm understanding it. You're not conceding that Dr. Frank somewhere along the line provided testimony establishing that plaintiff's decedent was exposed to respirable asbestos fibers. Is that accurate? What he said, that is accurate, but he says, Frank says, every product that I've ever seen releases something. And then he says the tape in the car wasn't causing the disease. Well, in this case, he was, a hypothetical question was posed to him about plaintiff's decedent's working as a glazer. Is that how you pronounce it? A glazer? A window glazer that contained asbestos-containing products. And he indicated that decedent's exposures to asbestos would have caused him to develop the mesothelioma that he had that caused his death. But that doesn't identify evidence of respirable asbestos fibers, does it? It does not. Okay. It does not. All right. I'm just, I'm trying to understand what it is about Frank's testimony that is so damaging here to Tremco's side. If I understand it, maybe the word damaging is not the right word, but what is most objectionable. And it's the testimony about any exposure is sufficient evidence to warrant the award of damages. Is that right? Yes, that's right. First, we don't regard any of it as rationally damaging to us. And we think that that is an improper opinion and it is not proper to the law. And before you get to that, it is a statement that the product gives the law. And it should not be considered either. I want to go back to the question I asked earlier about the admissibility versus its weight. McKinney is an unusual case because it's so close to this case, in my judgment, and indeed we have the same plaintiff's expert involved, Dr. Franks. And we decided this case, this court did, less than a year ago. But in McKinney, on the question I asked you about the admissibility of Frank's testimony versus weight, at the end of paragraph 47, this court said, concluded, we find no abuse of discretion in the admission of Frank's testimony. The defendant's welding rods could release respirable asbestos fibers improperly manipulated. So, in McKinney, apparently the trial judge let in Frank's testimony, you argued it should not be proper, and this court seemed to be saying, no, that was okay, but still reversed on the basis that it wasn't sufficient. Have I misunderstood this? No. And with complete respect to the court, I believe that McKinney categorically said that Frank's opinions, standing all by themselves, were inadmissible. And that's the, that's paragraph 44, we would agree it would be sheer unsubstantiated, etc. And that is the function of the trial judge and this court, to not rely upon, not permit expert opinion, which is just simply conclusion. But then, in McKinney, there was something different than there is here, which was, the court said there, that Frank's reliance upon the dement studies. And that was a guy who worked with the welding rods, and did testing, and concluded that they could emit fibers. And the court said that it was permissible for Frank to rely upon that. So, the sentence which you just read to me, in paragraph 26, where you started with, we find no abuse of discretion, but with respect, the first part of that same sentence says, because the defendant, by his silence, appears to concede the customariness and reasonableness of Frank's reliance on dement's work. With welding rods, we find that it's not an abuse of discretion. And so, in that sentence, the court said, we are permitting Frank in, because of the dement studies. And, and there is no analog, in this case, to dement analog. We have a pure, unadulterated customariness. Counsel, before we run out of time, because I wanted to ask Mr. Wilder about this. You have referenced in your brief, a 2006 study. Not your brief. Plaintiff has referenced in his brief, there was a 2006 study. And the results of that study were not presented to the jury. And therefore, they were allowed to use IPI 5.01, further, that you have forfeited any argument regarding that. So, what am I to make of that? And I think, I'm aware of no case, and I think it would be extraordinary, if the court were to come down and say, all that's left here is that there was a possibility that the jury could draw an adverse interest. And that alone is sufficient to permit this case to the point that the jury can forestall Frank. Well, I was just going to say, even with the study, isn't the point of beginning the requirement that plaintiff has to prove exposure to respirable asbestos fibers, only from that evidence could a jury then look at the study and then reach the point of concluding that the presence of the respirable asbestos fibers that had been established in conjunction with the scientific evidence contained in the study would allow the conclusion that the mesothelioma was caused by those fibers. I agree. The inference can't just hang in space all life. A few times up, Mr. Reagan. You'll have an opportunity to address this again. Thank you. Okay, Mr. Weldon. Well, we're on behalf of the plaintiff. We're asking you to affirm the verdict. The jury heard the testimony. The inferences and sentences are obviously in favor of the plaintiff. We've determined what's a reasonable amount of damages. There's no argument about that. And I suspect there's some questions. But I guess let's go to causation. What is the causation testimony? First, I'm going to get back to the testimony of the mesofibers, which comes from not just Dr. Frank. It comes from their experts. It comes from Trimpler's own statements using the 645 about the mesofibers in encapsulated products. Trimpler denies that. I'll get back to that in more detail. But as to causation, Thacker and Nolan say that it has some frequency, regularity, and proximity. It has to be more than the minimus or casual contact. And that's where you get into the testimony. I mean, this is, in some ways, the flip side of the community justice diagram. The candidate said, you know, it's eight months of bystander welding or welding that's going on versus 40 years as a candidate. Here we've got the guy who's got 35 years as a candidate. And we've got testimony from Darr in the 60s, that covers the 60s, and from Shultz, that covers the early 70s, clear up to the late 80s, that what they used was Trimco tape and Trimco caulk, that they cut it, that it dried on their hands, it dried on their clothes. Darr talks about chiseling off model caulk. You can recognize it was stuff he and Bill had put on, and then it would get broken, and they'd have to replace it, and they'd chisel it off. So, in terms of frequency, regularity, and proximity, in terms of contact, is there critical? Let's stop there, because this is the point that I've been trying to get clear in my mind, and that is, what is the evidence in this case of plaintiff's decedent's exposure to respirable asbestos fibers? Not that Trimco products contained asbestos. Plaintiff's decedent worked around asbestos products. Ipso facto, he was exposed to respirable asbestos fibers. What is the evidence, in fact, of that exposure to respirable asbestos fibers? The evidence is that asbestos products will give off respirable asbestos fibers when they're manipulated, when they're cut, when they're abraded. The tape is cut, the caulk is chiseled, the caulk dries, and they pick it off. It will give off respirable fibers. Where does that testimony come from? It comes from Dr. Frank, and he doesn't say every breath, and he doesn't say any and all exposures. He says, exposures above background. If you look at his declarations, which were actually after the hypothetical, I asked him, would occupational exposures be above background? Occupational exposures, he said, yes. And I must just digress for a second. Background is urban, it's four zeroes after the decimal one. It's rural, it's five zeroes. It's a very modest amount compared to what you can get from being respirable fibers and getting off. That's Frank's testimony that respirable fibers will be given off based on his database of a half century of working in the field. Defense experts, Longo says, if anybody suggests that these things would not give off, he's their expert, would not give off fibers, he's just making it up. That's the guy who did the test. The test was designed to not pick up the small price of top fibers, in my opinion, and that's what I read during the closing, because he made sure that he was only going to count his fibers, five fibers in length, five microns in length, two microns in width, which meant all they'd get would be bundles of price of top, if it was there up to 2000, and it's not supposed to be in bundles. So in this case, it didn't, the plaintiff need not have presented evidence that these specific products were manipulated in a particular way during the course of plaintiff's decedent's work to the extent that they would produce respirable asbestos fibers. Is that accurate? No, the plaintiff needed to. If the testimony in this case had been built from what he was a poor man who sat on a barrel and watched people go out on the job site and put on talk and cut tape and so on, then the jury should have found against us. But that wasn't what the testimony was, that's why I mentioned Dardot Shultz. Well, so then, let's just hone in on it. What then is that evidence? The specific manipulation of the Tremco products here and the release of fibers, specific to plaintiff's decedent's work. I'm going to take a back half of that first. In terms of release of fibers, it's not just Dr. Frank on your page. There are other experts. Graham said there would have been, yeah, there would have been these events, but he didn't think it was significant because Graham can express himself, can't possibly as a criminal, and he testified sooner than today. Finally, we've got Exhibit 645, where Tremco said in 1987 that if the products are not properly handled, the asbestos fibers can be released when they are sawed, when they sawed, taped, or cut, the tape got cut, or braided, it gets abraded when you're taking it off and you're chipping it off. Now, in the first half, what is the specific testimony that Tremco's products were cut or braided such that fibers would be released based on what Tremco said in a brochure in 1987 when it was trying to increase sales, based on what Frank says, that if you do it, it's going to go off fibers, based on what the defense experts said, which is, yeah, there's some fibers that are going to be released. The specific testimony is, if you go to Hector first, he worked in the early 60s, the end of the 60s, with Bill. They used mildew a lot. He remembered chiseling mildew caulk off that he and Bill had put on. It was dried out, and they had to use a chisel to take it off. They would dry it on their clothes, they'd lift their fingers, they'd get a nice bead. It would be on their hands. I did not make a note about what he said about tape grinding in preparation for the day, but that's got mildew caulk throughout the 60s. He had a specific testimony about that. That's a manipulation. Dave Schultz, first witness of the trial, he worked with Bill from the early 70s to the mid to late 80s. They used Tremco tape and caulk basically every day. The question by the defense, well, there would have been others on the market, other caulks and tapes. You would have used those too, right? He said, no. We basically just used Tremco. And they cut it, dried it on their hands. Their hands were sticky after the tape. They cut the tape. The caulk dried on the rags that had been used to try to make it look prettier or whatever you want to call it. More professional looking. All of that. And we've got Frank's testimony that he manipulated his testimony about fibers. We've got the two defense experts saying, yeah, probably took lots of fibers. We've got Tremco itself saying in a document in the Portmanteau, said that's our position that he gives off fibers. Now, in the early pie brief, Tremco says, is it the 645 that's just talking about friable asbestos products or raw asbestos? There's a paragraph above the one I read from that talks about like the textile mills and raw asbestos. But the products that are being talked about by Tremco in the 645, the second paragraph says, before the one I just read, said that people that use products that contain asbestos are also affected. These include carpenters, roofers, insulators. Insulators probably were exposed to friable products. Brake line installers. Those are mechanics. That's the encapsulated products. Rubber compounders. The tape that Tremco had was rubber, so it would have been, quote, encapsulated. And the roofing, which I just said at the start, Tremco had roofing products, and they took the position those were compounded, could not be these fibers. While they had them, Milano testified to that, let's see, I think 12 testimony about pages 115 and 126 of the transcript. He testified, so, yeah, we didn't think they had to be these fibers. But then they put in this brochure, yeah, actually, we kind of upgraded these products. So it's contrary to what they say in the reply brief. It wasn't just friable products they were talking about. So we've got the defendant making a statement, which the corporate rep stands by at the time of trial, making a statement that says if you cut or abrade these things, and it includes in there encapsulated products, they will give off fibers. We've got the defense expert don't admitting that fibers are giving off. They just don't think it's significant enough. We've got Dr. Frank saying, based on a database of a half century doing this, you're going to give off respirable fibers. Now, can I quantify for you the exact— Before I pose a thought, the discussion about they didn't think it was significant enough. Would you explain that further and what that means? Sure. Dr. Graham said, well, they'll probably have a couple of gallons of fibers. They'll give off a bit. But it will be significant enough to cause disease. There's not going to be that much contamination. That's a little bit of a paraphrase. A bit is not. Now, Dr. Graham, as I mentioned earlier, takes the position there are some defense experts who say chrysotile asbestos can never cause mesothelioma. I actually got him at a trial. He said, you can sort it every day. It just doesn't cause it, unlike all other asbestos. Which kind of asbestos? Chrysotile. And that's what's in these products. But chrysotile appears to people to be exposed to chrysotile. So Graham says that's because some of the deposits are contaminated with trimelite, which is another type of asbestos. And that's what caused it. So when Graham and his testimony says, it'll probably give off a bit. It's not significant. Graham, it was chrysotile. It's never going to be significant from his view. And the jury would have to reconcile that with Frank. Now, Mr. Longo, who also uses the word significant, he didn't testify fibers weren't giving off. He just said, I couldn't detect them under the criteria I used, which wouldn't allow me to detect them. But he said it's not significant. That's another question. How does that mean? You couldn't detect them with the criteria you used. You're suggesting that that criteria was incorrect or invalid or something, and that's why he couldn't detect them? Yeah. Why is that? And other than your view, was there any scientific evidence by any of the other experts that said, by the way, that was an invalid standard to describe asbestos? Nobody copied it either way. I don't think Graham was ever seen it. I don't think Frank was seen it. It was done just for this case. But I'll tell you in a second. Well, why should we accept your characterization of it as being? You should look at the record. And if you look at the record on the things I got from Frank, from Longo across his examination, before I said it was a fraud, he says it's not significant from an industrial hygiene point of view. He says, I have no opinion, he says repeatedly, of what constitutes significance in terms of the number of fibers from a medical point of view because he's an industrial hygienist. Now, going back to Longo, Longo did his test, and he determined in order for something to qualify as a fiber when it's counting, it has to be five microns or greater in length, and it has to be two microns or wider in width. And I got him to agree that the price of top fibers are not two, typically aren't two microns in width. No, they're not. They were to pick up individual fibers. In fact, we miss about 85% of them. Where did he go? In fact, he says, well, we'll pick up bundles, probably about 2,000 in a bundle. That's all he would find. So that was the case. So this was an important part of his ultimate opinion? Yeah, that's why he found nothing. Because he looked at it. I used an example from the jury, not to rehash whatever I used. The way he did that test would be like the same thing I said to the jury in closing argument. Okay, it's got to be five microns in length, even though both Grant and Frank say it's the little ones, two to three microns, and make it to the plura. That's what they mainly find when tests are done, and those are the ones you've got to get out to the plura to cause plura, but it's the little ones. That's what's predominant. So Frank and the other experts weren't asked, well, what about this five microns in length standard to which they could have applied? No, that's not right. No, they weren't asked that. It probably would have been longer. I mean, long ago, videotape, everybody, all three of them were videotaped before trial. There's a lot of movies on the jury, but they weren't asked about that. It had not been shown, and so it wasn't very big of a deal except for each side, and it wasn't violated that. But it was of importance because when you use the longer criteria, I have to admit, he would have kept up with survivors. He'd only get bundles of them, so that's a test that I believe that hurt the results of his test because he was very careful along the scale, very careful, and said, non-detective, non-detective. This wasn't an article published in the literature. This was a test he did for Gretko. You might say Gretko. He knows the question. Tremco. Tremco. A test he did for Tremco was $55,000. He was paid before he got to the testimony part of that. Mr. Wilder, I know that you have more to get through, but I've got to ask a question that relates to what Justice Turner read from McKinney earlier. The statement is, plaintiff had to prove he inhaled enough asbestos fibers from the welding rods, that the welding rods were a, quote, a material element and a substantial factor in bringing about his mesothelioma, quoting Thacker. Did this court get it wrong in McKinney, in that statement? And if it did not, if it is accurate in terms of its characterization of the law, applying that statement in McKinney to this case doesn't plaintiff lose on substantial factor? No. First of all, it was Wilder and McKinney I disagreed with, and in terms of proving he inhaled, nobody has ever required that, saying you inhaled it. I can't give a quantity. I couldn't give a quantity that anybody ever represented in the last 40 years up here, because nobody was out there measuring. Nobody quantified the amount that less Thacker had in his report. Nobody quantified the amount that less Reed had in or out. Well, it can't be de minimis. No. It's got to be enough to cause disease. It's got to be in the air. It's got to be airborne. If it's encapsulated, then we're not talking about the case. There's no way of getting mesothelioma unless it's in the air. It's in the air. It's got to be released. And it's got to be more than de minimis. It's got to be more than de minimis. But what is de minimis in terms of causing a disease? This court said in Waymire, 213.36 at page 31, 27 years ago, when it was the first frequency, regularity, and proximity, it said, in terms of Mandel, the defendant, Mandel's complaint, it could be just one fiber or at least a few fibers, and so it said, we are not concerned with the quantity of fibers. We are concerned with the legal significance. What is the testimony of what is significant in terms of causing mesothelioma? The testimony from Dr. Frank is that all exposures above background contribute to the cumulative dose. That cumulative dose is what causes the disease. And the hypothetical gave you that this man worked with, for decades, with the products of Trimco. It's not a bystander for eight months or whatever. He worked for decades with Trimco products. Now we get to somebody's two other things. Again, Trimco's own statement, Exhibit 645, 1987, and it was adopted by Milano at trial, saying this was our statement then and this was our position now. As the EPA concludes, Mr. Trimco's speaking, no level of exposure is without risk. That's Trimco's own doctrine. Dr. Migas, the oncologist, was asked to face 70 of his depositions in the hypothetical. I think it starts at 69. The same thing, assuming there's talk, assuming there's rest. What is implicated? He says it's all implicated as contributing to the risk. And he says that there is no smallest, he used the word, no smallest dose that's been identified when it comes to Mesa Thule in terms of a vote background. He gave a man his vote without objection with somebody who just had a weekend of exposure. So, and Dr. Frank's not an outlier. Who just had a what kind of exposure did you say? A weekend of exposure. Dr. Frank's not an outlier. Every governmental body, here and abroad, every health body, says there is no safe level when it comes to Mesa Thule. The only one that uses it is 933, the health safety consensus from 19 experts from around the world who said it's very minor. This court in Waymire said it's very minor. Everybody says it's going to be very minor. Each case turns on its facts. In this instance, we don't have a weekend of exposure. We've got 25. Well, following up on Justice Harris' question, though, to what extent has McKinney further clarified and set forth a standard that we have to have something beyond what has been said? Well, we have to have evidence of release. I say we've got that here from not just Dr. Frank, but from Trump with his own statement and their experts. We have to have what does it take to cause a disease, a disease that's misdiagnosed. Dr. Frank says everything in the background will contribute. Trinko says every exposure, no level of exposure is without risk. We've got support from Dr. Frank, which he references. We've got cross-examination using 0933-LCD-O, which says it is a very small amount that can cause it above background. And we've got a history of 25 years. I want to go back off to Dr. Frank's testimony here, the discussion about McKinney and what the McKinney court said about the admissibility and value of Dr. Frank's testimony. And Mr. Reagan said this court and McKinney disparaged that testimony as being not worth much. They disparaged it at points. At other points, they say it is substantive evidence. That's paragraph 54 for the jury to consider. And to me, it goes to, I think you got it right, it goes to the weight. Okay, he's never tested the virus. Nobody tested it. But he's not, I don't know, Trinko didn't test it, even though he needed to by 47, and now he's by 47. He's never tested him. Nobody tested him, but he knows 50 years that it gives off respirable virus, every product, if it's manipulated. Not just sitting over there on this counter, but if it's manipulated, it gives off respirable virus. McKinney accepted that and he even says near the end there, if you make the assumption the virus should give it off, undoubtedly the plant can handle something. But then they go into him and he's only there eight months. They're just going to walk on a floor tile and he has to show them what about the four years of the mechanic. Here, we've got the mechanics. We've got 35 years of the laser and we're looking day in and day out at the products that give off virus. Question? Before, go ahead. I want to ask about        at 438 through 442 and the report of the proceedings at 438 through 442 what you had cited and from my reading of that, the caulk and the tape were shipped to a laboratory to be tested but I don't know that they were ever tested. So, go ahead. I want to hear what your... Here's what, they called him a model back in their case in chief and went into a little bit and he brought out a test and they had an exhibit that had a chain of custody for the stuff that was going to go longer than 2015. Milano, they found a couple inches of caulk and Milano made up some tape. They made it up. That's why I'm going to wait for the test. They made it up. And I'm really leaking through the exhibit and I see it went to EPI and there's even a reference to EPI having tested so when I got it across I'm like, well, actually EPI would have to be inside the game and that's John Spencer from the time of the defense expert. EPI tested this in 06. Yeah, where are those results? EPI shipped it on to Longo in 2015. That's how it came up with EPI. So there were tests that were tests done. Those tests were given to the jury and if you look at Milano's record, I wonder why they shipped it to Longo 9 years later. I got a lot of stuff. Well, thank you Mr. Rauder. Mr. Reagan, any rebuttals there? Please. On the admissibility of the testimony of Dr. Franks, that's a question addressed in the trial court's discretion as to testify as an expert witness. And you're arguing the trial court used its discretion by admitting that testimony? Yes. And because there was no basis for it or whatever, what's your... Because we have a rich body of case law which talks about the expert testimony has to be based upon more than just speculation, et cetera. It has to be grounded in scientific theory, and on and on. Did this court, McKinney, say that Dr. Franks' testimony was improperly admitted? Those words don't appear, but clear inference. I mean, Dr. Franks' testimony says that we agree that it would be sheer unsubstantiated speculation, which is part of the test of whether you can bring in expert testimony, or this expert's testimony, to conclude that simply because he had not seen any other products that they were able to produce the virus. And so when you look at that paragraph 44 and combine it with 26, excuse me, 47, it's a 2060 paragraph, but anyway, it's clear, beyond any discussion, the only reason they talked about Dr. Frank at all was because of these studies. Go ahead. I didn't know whether that was correct to ask a question or decide that I'm still talking. Well, I mean, in paragraph 47 in McKinney, it says, we find no abuse of discretion in the admission of Frank's testimony, that the welding rods could release respirable asbestos fibers when properly manipulated. Is that a different opinion than what you're saying? Absolutely. And I was, earlier when I was talking to you, I said paragraph 26, I see now why that happened here because 47, and so in that sentence, Justice Harris, which you just read, the first part of the sentence says, it says the defendant hasn't conceded the reasonableness of Frank's reliance on DeMette's work. And DeMette's studies was the manipulation of the rods that concluded that it emitted fiber. And so it's only because of DeMette that they wrote the second half of the sentence and said, okay, well, there's no abuse of DeMette's because of the fact that  had          that DeMette was convicted of the crime. And so, I think that's the reason why both the plaintiffs and the defendants said that DeMette was guilty of the crime. I think that  plaintiffs and the defendants said that DeMette was guilty of the crime. I think that the plaintiffs and the